AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| DAVID MATTHEW TORRICO and RANDALL TAYLOR KELLER | ) ) ) ) | Case No. 12-8200-AEV |
| Defendant(s) | ) | |

FILED by _____ D.C.

MAY 1 7 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____May 16, 2012,____ in the county of ____Palm Beach____ in the ____Southern____ District of ____Florida____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C). | Possession with Intent to Distribute a controlled substance, namely 3,4-Methylenedioxymethamphetamine, a/k/a MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C). |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Special Agent Joshua Meuse
Printed name and title

Sworn to before me and signed in my presence.

Date: ____05/17/2012____

_____
Judge's signature

City and state: ____West Palm Beach, Florida____    Hon. U.S. Magistrate Judge Ann E. Vitunac
Printed name and title

# AFFIDAVIT
# OF
# JOSHUA J. MEUSE
# SPECIAL AGENT
# DRUG ENFORCEMENT ADMINISTRATION

I, Joshua J. Meuse, being duly sworn, depose and state as follows:

1.	I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) United States Department of Justice (DOJ), currently assigned to the Miami, Florida, Field Division.  As such, I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1)(e) and Title 21, United States Code.

2.	I have been a SA with the DEA since March 28, 2010.  I am currently assigned to the DEA West Palm Beach Resident Office.  Prior to my employment with DEA, I served as a Police Officer with the Gloucester Police Department in Gloucester, Massachusetts from December 2004 to December 2005.  I am currently assigned to investigations dealing with all aspects of importation, manufacturing, and distribution of illegal drugs, to include cocaine hydrochloride, "crack" cocaine, marijuana, and MDMA.

3.	While employed with the DEA, I have received ongoing training to include classes in Basic Telecommunication Exploitation, Internet Telecommunication Exploitation and Wire and Oral Telecommunication Interceptions.  As a SA with the DEA, I have conducted investigations of, and have been instructed in investigative techniques, concerning the unlawful distribution of illegal narcotics, possession with intent to distribute controlled substances, importation of illegal narcotics, use of communication facilities to conduct illegal narcotics transactions, maintaining places for purposes of manufacturing, distributing, or using controlled

1

substances, and conspiracies to commit these offenses, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), 856, 846, 952, and 963, respectively. Based upon this experience, and through the experience of other agents and detectives with numerous years of experience, I have also become well versed in the methodology utilized in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations. I have also conducted physical surveillances, electronic surveillances, and wire surveillances. Additionally, I have arrested individuals for various drug violations and have spoken with a number of drug dealers, drug users, and informants concerning the methods and practices of drug traffickers. As a result of my law enforcement experiences, and the experience of other agents and detectives I have worked with in dealing with drug traffickers, I have found that they rarely speak openly about their illegal narcotics transactions. Instead, they use coded language to disguise their conversations about illegal narcotics transactions and also frequently communicate via text messages. I have also conducted investigations involving the identification of co-conspirators through the use of telephone records and bills, financial records, drug ledgers, photographs, and other documents.

    4.    The information contained in this affidavit is based on my personal participation in this investigation and from information provided to me by other SAs and analysts for DEA and other federal, state and local law enforcement agents and officers. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint for David Matthew TORRICO and Randall Taylor KELLER, I have not set forth every fact known to me regarding this investigation. Rather, I have set forth only the facts I believe are necessary to establish probable cause for the arrests of David Matthew TORRICO and Randall Taylor KELLER for the offense of Possession with Intent to Distribute a controlled substance, namely 3,4-

Methylenedioxymethamphetamine, a/k/a MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

## FACTS IN SUPPORT OF PROBABLE CAUSE

5.   In April of 2012, DEA began an investigation into the drug trafficking activities of Randall Taylor KELLER (hereinafter referred to as KELLER). Specifically, DEA agents learned that KELLER had previously sold a total of approximately 16 grams of MDMA powder, a Schedule I controlled substance, to undercover police officers with the Boca Raton Police Department on three occasions. Based upon this information, DEA began its investigation and ultimately conducted a controlled purchase of approximately 56 grams of MDMA powder from KELLER.

6.   Specifically, on May 9, 2012, a Boca Raton Police Detective acting in an undercover capacity (hereinafter referred to as UC) spoke with KELLER regarding the purchase of 2 ounces of MDMA powder during which the UC and KELLER agreed that the sale would take place on May 11, 2012. During this conversation, KELLER told the UC that he would have to go to his source of supply's home which was located out west near Loxahatchee to pick up the 2 ounces of MDMA powder, drive to Boca Raton to complete the transaction with the UC, and then drive the money from the sale back to the source's home.

7.   On May 11, 2012, at approximately 12:10 p.m., the UC and KELLER met at the Cracker Barrel Restaurant located on 45th Street in Rivera Beach, Florida to discuss the purchase of approximately 2 ounces of MDMA powder from KELLER. During this conversation, KELLER told the UC that he had to meet with his source of supply for the MDMA at 3:00 p.m. in order to pick up the 2 ounces of MDMA to complete the sale. KELLER told the UC that the source would give him the 2 ounces of MDMA and KELLER would then have to bring the

3

money from the sale to the source after the deal. KELLER told the UC the cost for the 2 ounces of MDMA would be $1,680.00. During this meeting, surveillance was established on the vehicle driven by KELLER, namely a 2011 dark colored Mazda 3 with attached Florida tag # L716FD.

8. After the meeting with the UC was completed, agents followed KELLER to his place of work, the Acousti Engineering Company, located at 1530 53rd Street, West Palm Beach, Florida. Continuous surveillance by law enforcement was kept on KELLER's vehicle. At approximately 3:14 p.m., agents observed KELLER exit the Acousti Engineering Company and enter his vehicle. Surveillance units followed KELLER from the engineering company to the Publix parking lot located at 828 Southern Boulevard, West Palm Beach, Florida 33405. KELLER went inside the Publix to purchase a coke, returned to his vehicle and waited.

9. At approximately 3:55 p.m., agents observed a red Ford Explorer with attached Tennessee tag # D83 20A arrive at the Publix and park across to the west of KELLER's vehicle. A law enforcement database check revealed that the license plate attached to the red Ford Explorer is registered to David Matthew TORRICO (hereinafter referred to as TORRICO). A law enforcement database check revealed that TORRICO's current address is 350 Crestwood Circle, Apt. #305, Royal Palm Beach, Florida 33411. KELLER exited his vehicle and greeted TORRICO next to the Explorer. KELLER and TORRICO then entered the Explorer. At approximately 4:07 p.m., KELLER and TORRICO separated. KELLER got back into the black Mazda and left the Publix parking lot. Law enforcement agents continuously followed KELLER in the black Mazda as he drove from the Publix in West Palm Beach to the Yamato Road exit off of Interstate 95 in Boca Raton, Florida. During this time, the UC spoke to KELLER about the pending purchase and KELLER told the UC that he was on the way to Boca Raton.

10. At approximately 4:35 p.m., KELLER was observed by agents pulling into the

Panera Bread Restaurant located at 202 West Yamato Road, Boca Raton, Florida. KELLER met with the UC and entered to UC's vehicle. At that time, KELLER sold the UC approximately 58.6 grams of suspected MDMA powder in return for $1,680.00. The suspected MDMA powder was later field tested and yielded a positive result for MDMA. After the deal, at approximately 5:03 p.m., KELLER called the UC and told the UC that he could get 2 kilograms of MDMA powder from his source of supply for approximately $41,000.00. The UC agreed to purchase the 2 kilograms from KELLER and his source of supply the following week.

11. On May 13, 2012, the UC and KELLER spoke. During this conversation, KELLER told the UC that his source of supply was going to get several kilograms of MDMA powder shipped to him (the source of supply) directly. KELLER and the UC agreed that the 2 kilogram purchase would take place on May 15, 2012.

12. On May 15, 2012, at approximately 12:04 p.m., KELLER called the UC and told the UC that his source of supply should receive the package containing the kilograms of MDMA powder noted above sometime after 3:00 p.m. that day. At approximately 12:30 p.m., KELLER sent the UC a text message which stated that the package had not been shipped on time and thus the MDMA powder would arrive on May 16, 2012.

13. On May 16, 2012, at approximately 9:30 a.m. law enforcement agents began conducting surveillance on TORRICO's residence. At approximately 11:00 a.m. the UC spoke with KELLER. During this conversation, KELLER said that the source of supply was tracking the package, was waiting for it to be delivered, and confirmed that the sale of the 2 kilograms of MDMA would take place later that day. At approximately 1:40 p.m. law enforcement agents observed a Federal Express package being delivered to TORRICO's residence. At approximately 1:52 p.m., law enforcement agents observed TORRICO leave his residence with

the Federal Express Package in his possession.

14. Law enforcement agents then followed TORRICO and observed him driving to Dreher park located at Southern Boulevard just east of Interstate 95 in Palm Beach County, Florida. At this time, KELLER was already located at the park. At approximately 2:04 p.m., law enforcement agents observed TORRICO meet with KELLER in TORRICO's Ford Explorer. Shortly thereafter, KELLER exited TORRICO's vehicle and entered his own vehicle (the same black Mazda noted above). Continuous surveillance was maintained and agents followed TORRICO and KELLER, in their respective cars, as they drove from the park to the Panera Bread Restaurant located at 202 West Yamato Road, Boca Raton, Florida.

15. Upon arrival, TORRICO and KELLER both exited their respective vehicles and met briefly. Thereafter, TORRICO entered the Panera Bread Restaurant and KELLER reentered his vehicle and waited. At approximately 3:00 p.m. the UC arrived in the parking lot and parked next to KELLER's Mazda vehicle. KELLER exited his vehicle with the Federal Express package in his possession and got into the UC vehicle. KELLER showed the UC the contents of the Federal Express package, which had been opened, and told the UC that all of the MDMA was inside the package. At that time, both TORRICO and KELLER were taken into custody. A field test of the suspected MDMA was conducted which yielded a positive result for MDMA with an approximately weight of 1,906 grams.

16. Following their arrests, both TORRICO and KELLER made post *Miranda* statements to law enforcement admitting to their respective drug trafficking activities as outlined above. In addition, TORRICO told law enforcement that an additional 1,400 grams of MDMA was located at his home. A search warrant was then obtained for TORRICO's home (350 Crestwood Circle, Apt. #305, Royal Palm Beach, Florida 33411). During the course of the

6

execution of that search warrant, an additional 1,515 grams of MDMA were seized.

Based upon the aforementioned, I respectfully submit that probable cause exists to believe that David Matthew TORRICO and Randall Taylor KELLER have committed the offense of Possession with Intent to Distribute a controlled substance, namely 3,4-Methylenedioxymethamphetamine, a/k/a MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).


AFFIANT FURTHER SAYETH NAUGHT.


                                    SPECIAL AGENT JOSHUA MEUSE
                                    DRUG ENFORCMENT ADMINISTRATION


Sworn to and subscribed before
me this ___ day of May, 2012.


ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Misc No. __12-8200-AEV__

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR A COMPLAINT
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? ___ Yes _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? ___ Yes _X_ No

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: _____
Jennifer G. Millien (FL Bar No. 171700)
Email: jennifer.millien@usdoj.gov
Assistant U.S. Attorney
jennifer.millien@usdoj.gov
500 S. Australian Avenue
Suite 400
West Palm Beach, Florida 33401
TEL: (561) 820-8711
FAX: (561) 805-9846